13-3280-cv
*666 Drug, Inc. v. The Trustee of 1199 SEIU Health Care Employees Pension Fund*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of July, two thousand fourteen.

PRESENT:

JOSÉ A. CABRANES,
SUSAN L. CARNEY,
CHRISTOPHER F. DRONEY,
        *Circuit Judges.*

---

666 DRUG, INC., FKA MELROSE PHARMACY,
A NEW YORK CORPORATION,

        *Plaintiff-Counter Defendant-Appellant,*

        v.                                                      No. 13-3280-cv

THE TRUSTEE OF 1199 SEIU HEALTH CARE EMPLOYEES
PENSION FUND,

        *Defendant-Counter Claimant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**          JOHN A. CRANER, Craner, Satkin, Scheer,
                                      Schwartz & Arnold, PC, Scotch Plains, NJ.

**FOR DEFENDANT-APPELLEE:**           RICHARD L. DORN, Levy Ratner, PC, New
                                      York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's judgment is **AFFIRMED**.

Plaintiff-appellant 666 Drug Inc., FKA Melrose Pharmacy ("Melrose") appeals from an August 15, 2013 judgment of the District Court denying its motion to vacate an arbitration award in favor of defendant-appellee 1199 SEIU Health Care Employees Pension Fund (the "Fund"). We consider on appeal whether the District Court erred in accepting the arbitrator's conclusion that Melrose owed withdrawal liability to the Fund based on a withdrawal date of November 9, 2010. We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

The Fund is a multi-employer benefit plan subject to the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.* Melrose was formerly a member of a multi-employer association, which was party to a series of collective bargaining agreements ("CBAs") with what is now known as 1199 SEIU Healthcare Workers East (the "Union"). Pursuant to the CBAs, Melrose agreed to make contributions to the Fund.

On January 31, 1999, the CBA with the Union expired. Melrose's counsel spoke with representatives from the Union about negotiating a successor agreement, but no contract proposals were submitted by either side, nor did any negotiations or collective bargaining meetings take place. Upon the advice of counsel, Melrose maintained the status quo with the Fund over the next 11 years by contributing every month at the expired CBA rate, during which time more than a dozen Melrose employees became vested with pension benefits.

In preparing to be acquired by Duane Reade in July 2010, Melrose requested a "withdrawal liability" estimate from the Fund.[1] At Duane Reade's request, a representative of Melrose also met with a Union representative to assess the extent of Melrose's obligations to the Union. On November 9, 2010, the Union informed Melrose: "The Union has not had a contract with your Pharmacy for over ten years and the workers have not paid dues for some time, therefore we are disclaiming interest." App'x 63. On October 5, 2011, the Fund assessed withdrawal liability in the

---

[1] Under the MPPAA, "an employer [that] withdraws from a multiemployer plan . . . is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381(a). "Withdrawal liability is the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." *Trs. of Local 138 Pension Trust Fund v. F.W. Honerkamp Co.*, 692 F.3d 127, 130 (2d Cir. 2012).

amount of $846,613, based on its determination that Melrose had made a "complete withdrawal" from the Fund upon the disclaimer of interest by the Union in November of 2010.

On February 28, 2012, Melrose initiated arbitration proceedings pursuant to 29 U.S.C. § 1401(a),[2] contesting the amount of its withdrawal liability. On September 10, 2012, the Arbitrator issued his decision in favor of the Fund, which the District Court upheld in its judgment denying Melrose's motion to vacate the arbitration award. This timely appeal followed.

## DISCUSSION

### I. Date of Withdrawal

On appeal, we review the decisions of an arbitrator on matters of law in an MPPAA withdrawal dispute *de novo*. *HOP Energy, LLC v. Local 553 Pension Fund*, 678 F.3d 158, 160 (2d Cir. 2012). With regard to factual findings, the MPPAA provides that "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). The precise issue at dispute here—the date of an employer's withdrawal from a fund, *i.e.*, the date its obligation to contribute ceases—is a mixed question of fact and law. *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 630 (1993). The MPPAA does not provide a standard of review for mixed questions of law and fact, nor have we addressed this issue. Because we would affirm under either a *de novo* or clearly erroneous standard of review, we pretermit this question, assuming *arguendo* that no deference is warranted to the arbitrator's conclusion.

The principal issue on appeal is whether the arbitrator erred in concluding that Melrose did not withdraw from the Fund until November 9, 2010, when Melrose received the disclaimer letter from the Union. Under the MPPAA, an employer completely withdraws from a pension fund when it permanently ceases to have an obligation to contribute under the plan. 29 U.S.C. § 1383(a). Under the National Labor Relations Act, an employer is obligated to maintain the terms and conditions of a collective bargaining agreement, even after it expires. *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544-46 (1988). This statutory obligation continues until certain events occur, such as when a union unequivocally disclaims interest in representing a bargaining unit. *See, e.g.*, *Dycus v. NLRB*, 615 F.2d 820, 824 (9th Cir. 1980).

Melrose's principal contention on appeal is that the Union disclaimed interest as early as 1999 by virtue of its conduct—specifically, by not meeting with Melrose's counsel to negotiate a new CBA, permitting Melrose's employees to stop paying dues, and by not assisting Melrose employees with employment-related disputes. Yet a disclaimer of interest must be clear and unequivocal in order to be effective. *See id.* at 826 ("An exclusive bargaining agent may avoid its

---

[2] This statute states, in relevant part, that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

3

statutory duty to bargain on behalf of the unit it represents by unequivocally and in good faith disclaiming further interest in representing the unit."). Although there was uncertainty following expiration of the CBA, we agree with the arbitrator that a clear disclaimer did not occur until November 9, 2010, the date of the Union's letter. Indeed, Melrose itself deliberately did not treat the Union as having disclaimed during the preceding 11-year period, during which time Melrose continued to pay contributions to the Fund, availing itself of the Fund's benefits. The existence of a clear and equivocal disclaimer is further belied by Melrose's inquiry in 2010 into whether it continued to have any obligations towards the Union.

Accordingly, the arbitrator did not err in concluding that Melrose did not withdraw from the Fund until November 9, 2010.[3]

## II. Breach of Fiduciary Duties

Melrose argues next that it is not subject to withdrawal liability because the Fund's trustees breached fiduciary duties owed to Melrose by accepting contributions without there being a CBA in force with the Union. Melrose's argument stems from Section 302(c)(5) of the Labor Management Relations Act and the Fund's Trust Agreement, both of which require the existence of a "written agreement" with the Union. *See* 29 U.S.C. § 186(c)(5); App'x 71. It is well-settled, however, that an expired CBA satisfies this requirement. *See Cibao Meat Products, Inc. v. NLRB*, 547 F.3d 336, 341 (2d Cir. 2008) ("Today, we join several of our sister circuits in holding that an expired collective-bargaining agreement satisfies the written-agreement requirement of § 302(c)(5)(B) [codified at 29 U.S.C. § 186(c)(5)].").

Melrose argues that the Fund also breached its fiduciary duties by failing to make reasonable inquiry of the Union as to the status of its negotiations with Melrose and whether the Union had in fact disclaimed interest. We know of no authority for the existence of such a duty, and, in any event, the trustees properly exercised their duties in concluding, based on Melrose's own conduct, that it was required to contribute pursuant to the expired CBA.

We therefore hold that the Fund did not breach any fiduciary duties owed to Melrose.

---

[3] Melrose also argues that the defense of laches precludes the Fund from collecting any withdrawal sums. *See* 29 U.S.C. § 1399(b)(1) (requiring that notice of a withdrawal be given to an employer "[a]s soon as practicable"). Because this argument is premised upon the argument that Melrose became a withdrawn employer prior to 2009, we reject it for the reasons stated above.

4

**CONCLUSION**

We have considered all of plaintiff's remaining arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the August 15, 2013 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5